**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES of America, | ) | |
| | ) | No. 17 C 05299 |
| v. | ) | |
| | ) | Hon. Virginia M. Kendall |
| SANDRA SHOULDERS. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Sandra Shoulders, proceeding *pro se*, moved to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. (Dkt. No. 1.) On September 10, 2015, Shoulders pleaded guilty to conspiracy to possess with intent to distribute and to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 841(a)(1), also in violation of 21 U.S.C. § 846 pursuant to an 11(c)(1)(C) plea agreement in which she agreed to waive her right to appeal in exchange for a motion for reduction in her sentence pursuant to both U.S. Sentencing Guidelines Manual ("Guidelines") § 5K1.2 and 18 U.S.C. § 3553(e). Based on that agreement, the Court sentenced Shoulders to 101 months. *See United States v. Shoulders*, No. 14 CR 330-3, Dkt. No. 491. Because she waived her right to appeal Shoulders did not file a direct appeal, but now claims that she received ineffective assistance of counsel during the plea agreement process in violation of her Sixth Amendment right to counsel. For the reasons stated herein, the Court dismisses Shoulders' petition [1] and declines to certify any issue for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## BACKGROUND

A grand jury returned an indictment against Shoulders charging her with two counts: (1) conspiracy to possess with intent to distribute and to distribute one kilogram

1

or more of heroin, in violation of 21 U.S.C. § 846; and (2) possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1). *Shoulders*, Dkt. No. 127. In exchange for her guilty plea and her cooperation, the Government dropped the second count against Shoulders. *Id*., Dkt. No. 239, at 2, 11, 13. The Plea Agreement included an anticipated advisory sentencing guideline range of 120-135 months based on a combination of the *anticipated* offense level and the anticipated criminal history category of the Defendant. *Id*. at 10 (emphasis added). After reviewing the plea with her counsel, Shoulders signed the Plea Agreement, which included an express acknowledgment that the preliminary sentencing guidelines were not binding. *Id*. at 10-11. The Agreement also discussed the Government's willingness to make known to the sentencing judge the extent of the defendant's cooperation pursuant to Guidelines § 5K1.1 and 18 U.S.C. § 3553(e), and that the parties agreed to a term of imprisonment in the Federal Bureau of Prisons totaling 75 percent of the low end of the applicable guideline range or the statutory minimum sentence which at the time equated to 90 months. *Id*. at 10, 12, 14.

In her § 2255 motion, Shoulders alleges that her counsel told her that her sentence would be 6 years, or 72 months and that he would try to ensure that she would be placed at a federal prison close to the Chicago-area. (Dkt. No. 1, at 3-4.) After signing the Plea Agreement but before she was sentenced Shoulders was arrested and charged with felony retail theft and criminal damage to property in violation of her conditions of Pretrial release. *Shoulders*, Dkt. No. 451. As a result of Shoulders' untruthful explanation of the incident, the Government sought an increase in her guidelines based on this new obstruction of justice that occurred after her change of plea

but did not move to revoke her acceptance of responsibility reduction. *Id*. Dkt. No. 488, at 2. This increased her anticipated sentencing range upward to 135 to 168 months. The Court agreed with the two level obstruction enhancement and also agreed to provide Shoulders with her three levels off for acceptance of responsibility in spite of that obstruction and accepted the 11(c)(1)(C) agreement and sentenced Shoulders to a term of 101 months imprisonment on November 18, 2016; which was the agreed sentence — a sentence of 75% of the lower end of her sentencing range. *Id*. Dkt. No. 491.

## **LEGAL STANDARD**

A federal prisoner may move to vacate, set aside, or correct the sentence on the grounds that the court imposed the sentence in violation of the Constitution or laws of the United States, the court lacked jurisdiction to impose the sentence, the sentence exceeded that permitted by law, or the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Relief under § 2255 is considered an extraordinary remedy whereby the district court essentially reopens the criminal process to a person who has already had an opportunity for full process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). If the record before the district court shows that a petitioner is not entitled to relief, the district court may dismiss a petition under § 2255 at an early stage and without an evidentiary hearing. *Id*.

The Sixth Amendment provides defendants in criminal matters with the right to effective assistance of counsel. *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011). Courts presume that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S.

668, 690 (1984)). Thus, to establish a claim for ineffective assistance of counsel a defendant must show both that counsel's performance was so deficient that it could not be considered objectively "reasonable[] under the prevailing professional norms" and that the defendant suffered prejudice as a result of counsel's deficient performance. *Strickland*, 466 U.S. at 687-88. When a defendant has pleaded guilty, she must show prejudice by establishing a reasonable probability that, but for counsel's errors, she would not have pleaded guilty and would have insisted on going to trial. *United States v. Carroll*, 412 F.3d 787, 793 (7th Cir. 2005); *see also United States v. Peterson*, 711 F.3d 770, 780 n.4 ("[o]rdinarily, when a defendant challenges a sentence on the basis of ineffective assistance of counsel, the *Strickland* standard will apply"). "The benchmark for judging any claim to ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

## DISCUSSION

### I. Shoulders waived her right to file a § 2255 motion

In exchange for a reduction in her sentence from both the sentencing guidelines and the statutory ten year minimum sentence, Shoulders changed her plea from not guilty to guilty on September 10, 2015 pursuant to Fed. R. Crim. P. 11(c)(1)(C). *Shoulders*, Dkt. No. 234. Prior entering into the agreement, the Court placed her under oath and asked the following questions:

> The Court: "Have you gone over [the plea agreement] with Mr. Willis (her appointed counsel)?"
> Shoulders: "Yes, I did."
> The Court: "And did you ask him questions about the different paragraphs within the plea agreement?"
> Shoulders: "Yes."

> The Court: "Okay. Did he answer those questions for you?"
> Shoulders: "Yes, he did."
> The Court: "Did he talk to you about, for example, something called the federal sentencing guidelines?"
> Shoulders: "Yes, he did."
> The Court: "And did he talk about the difference between those and what we call the maximum penalties under the law?"
> Shoulders: "Yes."
> The Court: "Okay. And did you ask him questions about those different provisions?"
> Shoulders: "Yes."
> The Court: "And he answered those questions?"
> Shoulders: "Yes."
> The Court: "Are you satisfied with Mr. Willis' representation?"
> Shoulders: "Yes."
> The Court: "And do you think you've had enough time to talk with Mr. Willis about this 20-page document?"
> Shoulders: "Yes."

*Id*. During the plea colloquy, while under oath, represented by counsel, and after affirming that she had worked with counsel, and was pleased with his representation, the Court informed Shoulders about the sentence she would be facing:

> …
> The Court: "That charge if you plead guilty to it has a maximum penalty that's on page 5 … and it's a ten-year mandatory minimum sentence and a sentence of life imprisonment at the high end and it cannot be given a term of probation … do you understand that?"
> Shoulders: "Yes, I do."
> …
> The Court: "[Y]our anticipated advisory range then ends up as 120 to 135 months. Do you understand that?"
> Shoulders: "Yes."

*Id*. Recognizing that the agreement was governed by an agreed sentence, the Court further asked Shoulders about her understanding of that agreement:

> The Court: "And they make that motion pursuant to the [G]uideline [§] 5K1.1. And it also moves you from the guideline range and even below the statutory mandatory minimum of 10 years. Do you understand that?"
> Shoulders: "Yes, I do."
> The Court: "So if the government makes that motion and I accept that motion, the agreement is going to be governed by a particular section

5

> under the [G]uidelines called 11(c)(1)(C). And that means that Mr. Willis and Miss Pillay, the United States [A]ttorney and your attorney, have both agreed that the sentence that I should give you would include a term of imprisonment in the custody of the Bureau of Prisons of 75 percent of the low end of the applicable guideline range or the statutory minimum sentence, whichever one is higher. So other than that agreed term of incarceration, there's no other agreements between the parties regarding the sentence. Is that your understanding?"
> Shoulders: "Yes."
> …
> The Court: "If I do accept it, that is the sentence that I must impose. I don't have any wiggle room. It's agreed upon if I accept it. Do you understand that?"
> Shoulders: "Yes."

*Id*. The Court then reviewed what Shoulders would be agreeing to in exchange for that reduction. Aside from waiving her right to appeal, Shoulders was also waiving her right to file a motion pursuant to 28 U.S.C. § 2255:

> The Court: "It's also – you're also agreeing not to challenge it later on down the road in what we call a collateral attack, a [§] 2255 attack. You are saying I'm not going to challenge that sentence based upon constitutional grounds because I recognize I'm getting this cooperation agreement. Do you understand that?"
> Shoulders: "Yes."
> The Court: "Alright. There is a very small little waiver there … you can't give up ineffective assistance of counsel claim against Mr. Willis if you believe he didn't discuss with you and aid you in understanding that waiver. That's the only thing that's available to you in the future. Do you understand that?"
> Shoulders: "I understand."

*Id*.

A court considering a binding plea agreement pursuant to 11(c)(1)(C) has only three options: "accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." *U.S. v. Dixon*, 687 F.3d 356, 357 n.1 (7th Cir. 2012) (quoting Fed. R. Crim. P. 11(c)(3)(A)). After the colloquy, which included admissions under oath of her explicit understanding of the terms of the plea agreement, and that she was entering into this agreement knowingly, voluntarily, and with the assistance of

counsel, the Court accepted the plea agreement and Shoulders' guilty plea. *Shoulders*, Dkt. No. 234. At her subsequent sentencing hearing the Court sentenced Shoulders to 101 months in the custody of the Federal Bureau of Prisons; a sentence that is 75 percent of the low end of her eventual sentencing range of 135-168 months. *Id*. Dkt. Nos. 487, 491. In other words, Shoulders received the benefit of the plea agreement that she entered into with the Government.

A plea agreement may include a defendant's waiver of a right to a direct appeal or to bring a § 2255 petition, and they are routinely upheld as valid. *Solano v. United States*, 812 F.3d 573, 577 (7th Cir. 2016) (a defendant may voluntarily waive her right to both direct appeal and collateral attacks within a written plea agreement); *Jones v. United States*, 167 F.3d 1142, 1144-45 (7th Cir. 1999) (same); *United States v. Chapa*, 602 F.3d 865, 868 (7th Cir. 2010). A waiver will stand unless the defendant can show that the guilty plea was entered into without knowing or understanding the terms thereof, or unless the defendant can prove ineffective assistance of counsel specifically with respect to negotiation of the waiver. *Mason v. United States*, 211 F.3d 1065, 1068 (7th Cir. 2000) (discussing the grounds for challenging such a waiver in a written plea agreement). Furthermore, a defendant fails to make such a showing when she provides unequivocal affirmative admissions regarding her understanding of the terms of the plea agreement during a plea hearing and the colloquy includes giving up the right to appeal or challenge a sentence in any way. *Mason*, 211 F.3d at 1068; *see also United States v. Woolley*, 123 F.3d 627, 632 (7th Cir. 1997); *United States v. Sura*, 511 F.3d 654, 661 (7th Cir. 2007) (requiring the district court to inform the defendant of an appellate waiver during the Rule 11 colloquy). In fact, in *Mason* the sentencing judge held that the defendant's

waiver of a right to appeal within the written plea agreement was valid and enforceable based entirely on the defendant's statements in the colloquy during the plea hearing, and that the defendant's claim of ineffective assistance of counsel was nothing more "than a challenge to his sentence." *Mason*, 211 F.3d at 1068.

The facts here are strikingly similar in that Shoulders clearly and unequivocally stated that she understood the terms of the plea agreement, that she discussed these terms with her counsel, and that she was satisfied with his assistance. *Shoulders*, Dkt. Nos. 234, 239. She also specifically understood and assented to the terms of her waiver of the right to a direct appeal or to the filing of a § 2255 motion. *Id.*, Dkt. No. 234. Shoulders' belief that she was facing a lower sentence is inconsistent with statements made under oath and she presents no facts to support that there was any other understanding, *See United States v. Stewart*, 198 F.3d 984, 986 (7th Cir. 1999) (statements made under oath at the time of the a plea are given considerable weight). The presence of a valid and enforceable waiver of the right to appeal – both on direct appeal and in a collateral attack – constitutes adequate grounds for dismissal of a subsequent § 2255 claim outside very narrow exceptions. *United States v. Hare*, 269 F.3d 859, 862 (7th Cir. 2001); *United States v. Mason*, 343 F.3d 893, 894 (7th Cir. 2003). In an attempt to get around her waiver of the right to appeal, Shoulders argues that she received ineffective assistance of counsel, which requires a separate analysis but ends with the same result.

II. **Shoulders' claim of ineffective assistance of counsel fails**

In spite of this valid waiver, Shoulders claims that her attorney told her something different than what actually happened and therefore he was ineffective. In order to succeed on a claim of ineffective assistance of counsel Shoulders must first demonstrate

that counsel's performance was deficient; and then she must show that the deficient performance prejudiced the defense. *Brock-Miller v. United States*, 887 F.3d 298, 308 (7th Cir. 2018) (citing *Strickland*, 466 U.S. at 687). Of course Shoulders is entitled to effective counsel during the plea negotiation process as it represents a critical phase of litigation. *See Lafler v. Cooper*, 566 U.S. 156, 162 (2012).

### a. Counsel's performance was not deficient

To prove ineffective assistance of counsel in negotiating a plea agreement, Shoulders must first show that her counsel's performance was deficient. *See Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016) (discussing the *Strickland* standards during plea negotiations). This requires a defendant to show that counsel "performed seriously below professional standards." *United States v. Williams*, 698 F.3d 374, 386 (7th Cir. 2012). Shoulders' deficiency claims are that counsel instructed her to plead guilty in exchange for a 6-year sentence, and that her counsel failed to "clean up and correct my sentence" after she was in fact sentenced to 101-months. (Dkt. No. 1, at 4.)

However the details of the Plea Agreement and the plea colloquy objectively contradict these allegations and the record is devoid of any evidence of deficient performance. The record shows that Shoulders was well-aware and was even pleased with the work her counsel did on her behalf. *Shoulders*, Dkt. No. 234 ([t]he Court: "Are you satisfied with Mr. Willis' representation?", Shoulders: "Yes"). Shoulders even admits as much in her § 2255 motion. (Dkt. No. 1, at 4) ("[m]y former attorney … was very accommodating prior to my mother's death and prior to me accepting the plea agreement"). Further, she signed the Plea Agreement that her counsel helped to create that contained provisions identifying the proposed sentencing range as well as the down

9

departure to 75 percent of the low sentence range. *Shoulders*, Dkt. No. 239. The failure to provide any evidence such as an affidavit or anything beyond a "naked assertion" that her counsel's performance was deficient when weighed against the knowing and voluntary admissions she made under oath results in a failure to prove the existence of deficient performance. *See, e.g. Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) (defendant's failure to provide any probative evidence supporting bear assertions of deficient performance warranted denial of ineffective assistance claims).

More so, Shoulders' allegation that her counsel said she would get a 6-year sentence is inconsistent with the type of agreement that she signed. (Dkt. No. 1, at 4.) The only change that occurred at sentencing was a change that Shoulders herself caused — that is her obstruction enhancement for committing a new crime. Remarkably, the AUSA did not seek to remove the three levels off her sentencing guideline range for acceptance of responsibility even though the Commission clearly states that when a defendant obstructs, acceptance of responsibility should generally not be given. Guidelines § 3E.1 cmt. n.3 (2016). Her counsel's effectiveness is further evidenced by the fact that he was able to keep the cooperation agreement on the table despite her Pretrial Release violation and the application of an obstruction enhancement. *Shoulders*, Dkt. No. 487. The change in the guideline calculation that occurred due to her arrest did not impact the plea agreement and the Government upheld its side of the agreement by moving for the downward departure from the guidelines, and more importantly, for a sentence below the statutory mandatory minimum sentence of ten years. The Court then accepted that agreement and imposed that agreed sentence.

Issues such as ineffective assistance of counsel are not ripe for review where there is no evidence in the record to support the claims. *United States v. Parker*, 5 Fed. App'x 528, 531 (7th Cir. 2001); *United States v. Garrett*, 90 F.3d 210, 214-15 (7th Cir. 1996). Based on her knowing and voluntary entry into the Plea Agreement, the plea colloquy, and her lack of any evidence in the record to the contrary, Shoulders cannot show that her counsel's performance was deficient.

      b. *Shoulders cannot show prejudice*

To establish prejudice a defendant must establish that, but for counsel's erroneous advice, the defendant would not have entered the guilty plea. *See Woolley*, 123 F.3d at 635; *see also Gaylord*, 829 F.3d at 506. To the contrary Shoulders received significant benefits from the plea agreement: one count of the indictment was dropped, a reduced guideline range, and a reduction below the mandatory minimum sentence.

The evidence of her statements during the plea colloquy and the signed Plea Agreement prove that Shoulders knowingly and intelligently entered into the plea agreement with the Government through assistance of counsel. Shoulders' claim that she would have insisted on going to trial but for her counsel's assurances are inconsistent with the facts that show she cooperated with the government in order to receive an 11(c)(1)(C) plea agreement that significantly reduced her sentence. *See Berkey v. United States*, 318 F.3d 768, 772-73 (7th Cir. 2003). She has failed to present any objective evidence of a reasonable probability that she would have taken that step. *Id*. at 773. Shoulders does not establish prejudice of counsel's performance given the sentence she received and what she could have received if she had gone before a jury. It is inconceivable that Shoulders would have declined the government's highly favorable

plea offer that resulted in a 101 month sentence *below* the mandatory minimum sentencing range and instead rolled the dice at trial in the face of overwhelming evidence against her and the prospect of a 163 month sentence. *See, e.g., Williams v. United States*, 879 F.3d 244, 249 (7th Cir. 2018) (inconceivable that defendant would have gone to trial where plea agreement removed possibility of a mandatory life sentence). Shoulders simply fails to present any evidence suggesting how the sentence she was prejudiced by her counsel's performance considering the light sentence she received compared to what she was facing.

In sum, the record shows that Shoulders had a thorough and complete change-of-plea hearing where she admitted under oath that she understood what her sentence would be, that she was satisfied with her lawyer's performance and she understood she was waiving her right to appeal and to collaterally attack her sentence in exchange for a reduction in her sentence by agreement of the parties. Because there are no facts that support her allegation that her seasoned defense lawyer was deficient and certainly no facts to show she was prejudiced by her acceptance of the plea agreement, she cannot circumvent her knowing waiver of her right to file this motion. Shoulders waived her right to file a § 2255 motion with the minor exception to a claim for ineffective assistance of counsel. But without a viable claim for ineffective assistance of counsel, the valid waiver of her right to appeal or file any collateral attacks within the Plea Agreement must be enforced and so the Court lacks jurisdiction to review her motion. *See United States v. Nave*, 302 F.3d 719, 721 (7th Cir. 2002); *United States v. Crayton*, 259 Fed. App'x 889, 890 (7th Cir. 2008); *United States v. Hallahan*, 756 F.3d 962, 971 (7th Cir. 2014).

## CONCLUSION

The Court dismisses Shoulders petition [1] for lack of jurisdiction. The Court declines to issue a certificate of appealability because Shoulders' claims do not involve "errors of constitutional magnitude," and they do not raise "fundamental defects" resulting in a complete miscarriage of justice.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: May 7, 2018